Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before Deputy Commissioner William C. Bost as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer is self-insured; Alexsis is the servicing agent.
4. Plaintiff's compensation rate is $466.00.
5. Plaintiff suffered a compensable injury by accident on or about May 31, 1994.
6. The medical records of Dr. Ann K. Joslyn and Dr. Glenn J. Jaffe of the Duke University Medical Center have been stipulated into evidence, along with other documents which were submitted with the Pre-hearing Agreement.
***********
Based upon the competent evidence of record herein, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On May 31, 1994, plaintiff was employed as a trimmer for defendant-employer and had been employed with defendant-employer for over 18 years.
2. On that date, plaintiff suffered a compensable injury by accident when a regulator (an object similar to an ice pick) accidentally penetrated her right eye.
3. Plaintiff was treated by Dr. Ann K. Joslyn on May 31, 1994. Dr. Joslyn found a corneal laceration to the right eye and performed surgery to repair the laceration.
4. On June 14, 1994, an ultrasound of plaintiff's right eye showed that she suffered no retinal detachment; however, on June 21, 1994 Dr. Joslyn suspected a retinal tear and referred plaintiff to Dr. Glenn J. Jaffe at Duke University Medical Center for evaluation of a possible retinal tear.
5. Dr. Jaffe found that plaintiff required surgery to her right eye for a vitreous incarceration, which he performed on June 22, 1994.
6. Plaintiff attempted to wear a hard contact lens to correct her vision but was unable to wear the lens due to an irregular cornea, resulting from laceration of the cornea at the time of injury.
7. Due to her injury by accident, plaintiff developed a cataract in her right eye. As a result of the cataract, surgery was performed by Dr. Joslyn on July 31, 1995 whereby the cataract was extracted and the natural lens of her right eye was replaced with a plastic lens. Plaintiff subsequently developed some posterior capsular opacity (cloudy membrane). As a result of plaintiff's lens replacement, she lost the ability to focus in the right eye and needed to wear bifocal glasses.
8. On October 17, 1995, Dr. Joslyn was of the opinion that plaintiff was at maximum medical improvement and had uncorrected distance vision of 20/50 and uncorrected near vision of J14. On November 14, 1995, Dr. Joslyn determined that using North Carolina Industrial Commission guidelines, plaintiff suffered 65.8% loss of vision to her right eye. Dr. Joslyn later corrected this rating during her deposition testimony. She opined that uncorrected distance vision of 20/50 and uncorrected near vision of J14 would be an 80% impairment for nearness, 23.5% impairment for distance and a combined rating of 81%. When a Form 26 Agreement was submitted to the Commission, the Claims Department of the Industrial Commission determined that Dr. Joslyn's findings corresponded to a 23.5% permanent partial disability to plaintiff's right eye. However, plaintiff's condition continued to worsen and new eye problems relating to her injury developed after October 17, 1995. Therefore, plaintiff did not reach maximum medical improvement until April 29, 1997.
9. Beginning in January of 1996, plaintiff began to complain of double vision when looking to her right side. Ocular motility testing showed that plaintiff's eyes remained straight unless she looked to the far right. Upon retesting on April 29, 1997, the ocular motility examination showed that plaintiff's eyes remained straight, even when moving to the right; she continued to have double vision with or without her glasses; her uncorrected visual acuity in the right eye was 20/80 for distance and 14/140 or 20/400 for nearness. Dr. Joslyn further found that plaintiff had a pupillary defect in the right eye, in that her pupil was drawn up toward the area of the scar; she also had a corneal scar in the right eye; an iris defect in the right eye and some capsular opacity.
10. As a result of her admittedly compensable injury by accident, plaintiff has suffered impaired vision in her right eye and permanent damage to her right eye, an important external organ of the body. At the time she reached maximum medical improvement on April 29, 1997, plaintiff had uncorrected distance vision in her right eye of 20/80 and uncorrected near vision of 14/140 or 20/400. Based upon American Medical Association (AMA) guidelines for evaluating permanent impairment, plaintiff has an 85% loss of central vision in her right eye, combining both the distance vision loss and the near vision loss. Based upon the Industrial Commission's Loss of Vision Table, plaintiff has an 80% loss of near vision and 41.5% loss of distance vision, but the Industrial Commission's table does not combine the two impairment ratings to determine the overall loss of vision.
11. However, distance vision and near vision do not measure the same thing. The Industrial Commission Loss of Vision Table does not provide adequate guidelines to rate plaintiff's injury. The American Medical Association's guidelines used by Dr. Joslyn more accurately measure plaintiff's impairment to her right eye and are accorded greater weight.
12. Plaintiff's left eye was not injured, but as a result of her right eye injury, it is harder for her to use both eyes together and she gets a glare off of her implant. These problems are direct and natural consequences of her right eye injury.
13. Plaintiff's eye condition is likely to worsen in the future and she will need future medical treatment.
14. Plaintiff has sustained an 85% impairment of vision in her right eye and permanent injury to her right eye, an important external organ of the body.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of her admittedly compensable injury by accident, plaintiff has impaired vision of 20/80 for distance and 14/140 or 20/400 for nearness which results in an 85% loss of vision in her right eye.
2. Plaintiff is entitled to compensation for a total loss of vision in her right eye pursuant to N.C. Gen. Stat. §97-31(16) and (19), as 85% or more loss of vision in any eye constitutes industrial blindness and is compensated as a total loss of vision of such eye. Plaintiff is not entitled to equitable compensation under N.C. Gen. Stat. § 97-31(24).
3. The plaintiff is entitled to have the defendants pay for medical expenses incurred or to be incurred in the future as a result of plaintiff's compensable injury. N.C. Gen. Stat. §§97-2(19), and 25.
4. Plaintiff has failed to show that she is entitled to indemnity compensation for an unscheduled injury affecting her left eye, under N.C. Gen. Stat. § 97-31(24). However, plaintiff is entitled to medical treatment for any condition that directly and naturally flows from the injury to her right eye. Therefore, plaintiff is entitled to payment from defendant for any medical treatment of her left eye which is related to her injury.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to counsel fee, defendant shall pay to plaintiff a lump sum of $37,280.00 (120 weeks at $466.00 per week) for the total loss of vision to her right eye.
2. A reasonable attorney's fee in the amount of twenty-five percent of the compensation awarded to plaintiff herein is hereby awarded for plaintiff's counsel. Said attorney's fee shall be deducted from the compensation otherwise payable to plaintiff and shall be paid directly to plaintiff's attorney.
3. Defendant shall pay all medical expenses incurred, or to be incurred in the future by plaintiff as a result of her compensable injury to her eyes when bills for same have been submitted to defendant and approved pursuant to procedures established by the Commission.
4. Defendant shall pay the costs.
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________ J. HOWARD BUNN, Jr. CHAIRMAN
S/_____________ LAURA K. MAVRETIC COMMISSIONER